**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1

**McDonnell Crowley, LLC**
500 Hooper Avenue, Second Floor
Toms River, NJ 08753
(732) 383-7233
Brian T. Crowley
bcrowley@mchfirm.com
*Counsel to Moxie Apparel Inc. DBA Moxie Scrubs*

-and-

**The Law Offices of Richard J. Corbi PLLC**
104 West 40th St., 4th Floor
New York, NY 10018
(646) 571-2033
Richard J. Corbi (*pro hac vice* forthcoming)
rcorbi@corbilaw.com

*Counsel to Moxie Apparel Inc. DBA Moxie Scrubs*

| | |
|---|---|
| In re:<br><br>CAREISMATIC GROUP INC.,<br><br>Post-Effective Date Debtor.[1] | Chapter 11<br><br>Case No. 24-10569 (VFP)<br><br>(Jointly Administered) |

**REPLY OF MOXIE APPAREL, INC. DBA MOXIE SCRUBS**
**TO POST-EFFECTIVE DATE DEBTORS' OBEJCTION TO MOTION**
**FOR ENTRY OF AN ORDER THAT THE DISCHARGE INJUNCTION**
**DOES NOT APPLY TO MOXIE APPAREL INC. DBA MOXIE SCRUBS**

TO:   THE HONORABLE VINCENT F. PAPALIA,
      UNITED STATES BANKRUPTCY JUDGE:

---

[1] An Order [Case No. 24-10561, Docket No. 894] has been entered in Case No. 24-10561 (the "**Lead Case**") granting a final decree and closing the Lead Case and each Affiliated Case (as defined in the Order), other than the Remaining Case (defined below), directing that all further reporting concerning the administration of the assets and liabilities in the Lead Case will occur only in the Remaining Case of Careismatic Group Inc., Case No. 24-10569 (the "**Remaining Case**").  The docket in Case No. 24-10569 should be consulted for all matters affecting this case.

Moxie Apparel Inc. DBA Moxie Scrubs ("**Moxie Apparel**"), by and through its undersigned co-counsel McDonnell Crowley, LLC and The Law Offices of Richard J. Corbi PLLC, hereby files this reply (the "**Reply**")[2] to the *Post-Effective Debtors' Objection to Motion for Entry of an Order that the Discharge Injunction Does Not Apply to Moxie Apparel, Inc. DBA Moxie Scrubs* (the "**Objection**").  [Doc. No. 373].

Moxie Apparel also submits the *Declaration of Richard J. Corbi in Support of the Reply of Moxie Apparel, Inc. DBA Moxie Scrubs to Post-Effective Debtors' Objection to Motion for Entry of an Order that the Discharge Injunction Does Not Apply to Moxie Apparel, Inc. DBA Moxie Scrubs* (the "**Corbi Reply Decl.**") in further support of this Reply.

Accordingly, Moxie Apparel respectfully represents as follows:

### PRELIMINARY STATEMENT

1.    The Debtors' Objection is nothing more than a blinkered approach designed to distract this Court from the simple fact that Moxie Apparel was a known creditor entitled to actual notice of the Debtors' Chapter 11 Cases, deadlines and consequences for failure to comply with such deadlines.  The Debtors' attempts to create a standard of "adequate notice"[3] in order to defeat the Motion fail as a matter of law and the Court should not countenance such an attempt.

2.    Due process rights are paramount in all court proceedings, not only bankruptcy proceedings. As the district court in *In re Grumman Olson Indus.* explained: "[c]ourts have rejected the premise that maximizing the value of the estate outweighs the due process rights of potential claimants."  467 B.R. 694, 711 (S.D.N.Y. 2012).

3.    Accordingly, this Court should grant the Motion.

---

[2] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Motion.
[3] Objection, ¶¶ 14-16, 21.

**<u>REPLY</u>**

4.      This Court should grant the Motion and overrule the Objection for several reasons.

5.      <u>First</u>, Moxie Apparel does not seek an advisory opinion from this Court.  "And although the Bankruptcy Code does not expressly authorize the modification of a discharge, as distinct from its revocation, 11 U.S.C. § 727(d), which is equivalent to the dissolution of the section 524 injunction created by the discharge, any court that issues an injunction can modify it for good cause on the motion of a person adversely affected by it."  *In re Hendrix*, 986 F.2d 195, 198 (7th Cir. 1993) (citations omitted).  Additionally, "a person subject to an injunction always has the right to ask the court that is administering it whether it applies to conduct in which the person proposes to engage.  If this looks like a request for an 'advisory opinion,' it is one that even a federal court can grant, in order to prevent unwitting contempts . . . ."  *Id*. at 200 (citations omitted).

6.      Moxie Apparel prosecuted its Massachusetts Complaint seeking damages against various entities related to the Debtors.  It is a creditor of the Debtors and therefore, adversely affected by the Plan's Discharge Injunction.  Accordingly, Moxie Apparel requests confirmation that the Plan Discharge Injunction does not apply to Debtor related entities.

7.      <u>Second</u>, the Debtors do not dispute the fact that Moxie Apparel was a known creditor.  *See* Objection, ¶¶ 5-6.  Yet inexplicably, the Debtors failed to schedule the Moxie Apparel or notify it of the bar date.  *Id*.  The Debtors and Moxie Apparel entered into a Supply Agreement on August 5, 2020,[4] which Moxie Apparel terminated on September 19, 2023 because Krazy Kat unilaterally changed the terms of the original Supply Agreement, thus breaching and improperly holding inventory.  *See* Motion, Corbi Decl. Exhibit A, Massachusetts Complaint, ¶¶

---

[4] A true and correct copy of the Supply Agreement is attached to the Corbi Reply Decl. as **Exhibit A.**

51-55. The Debtors continued assertions that Moxie Apparel owed the Debtors is incorrect,[5] because it was the **_Debtors_** improperly retaining Moxie Apparel's pre-paid deposits pursuant to the Supply Agreement. Moxie Apparel attempted to negotiate with the Debtors' CEO in January 2024, not the Debtors' Director of Credit and Collections[6] but because of the ongoing conflict he had, the CRO commenced negotiations.

8. "A creditor will be deemed to be 'known' to the debtor if the debtor has either actual knowledge of its existence or if its identity 'can be identified through reasonably diligent efforts.'" *In re TWA, Inc.*, 96 F.3d 687, 690 (3d Cir. 1996) (citing *Chemetron Corp. v. Jones*, 72 F.3d 341, 346-47 (3d Cir. 1995)). "Although 'a vast, open investigation[]' is not required, the debtor must undertake a careful examination and diligent search of its own books and records." *Id*.

9. Here, nothing prevented the Debtors from adding Moxie Apparel to the list of parties that the Debtors sent notices of the bar date and confirmation deadlines. Because the Debtors knew of Moxie Apparel's claims as of February 6, 2024, a vast, open investigation was neither required nor needed because the Debtors' CRO himself had the creditor information that he could have easily communicated to counsel or at a minimum, the claims and noticing agent.

10. The Debtors' assertions that Moxie Apparel was not in the Debtors' books and records because it allegedly owed the Debtors money conflicts with the CRO's own admission that according to "Careismatic books and records," the Debtors claim they hold a deposit $52,685.08 deposit out of $490,000 which had already been paid which the Debtors would retain in exchange for the shipment of the 11,476 manufactured units to Moxie Apparel. *See* Motion, ¶ 26 and Exhibit C to Corbi Decl. Rather, Moxie Apparel does not owe any amounts to the

---

[5] Objection, ¶ 4.
[6] *Id*.

Debtors, instead Moxie Apparel paid 3% equity to the Debtors pursuant to the Supply Agreement plus the pre-paid deposits. Notably, Debtors' counsel was not copied on these e-mail exchanges. Courts in this district have found such arguments attempting to justify not providing an actual known creditor with actual notice, "suspect". *See, e.g.*, *In re Tannen Towers Acq. Corp.*, 235 B.R. 748, 753-754 (D.N.J. 1999) (district court reversed bankruptcy court and permitted known creditor file late claim because the debtor's explanation as to why he was not provided notice was "suspect.").

11.   <u>Third</u>, known creditors, such as Moxie Apparel, are entitled to actual notice of the bankruptcy proceedings as required by statute. The Debtors' repeated claims of "adequate" notice of the bankruptcy because their CRO himself ***initiated*** a potential settlement offer of Moxie Apparel's claims that conveniently contained impermissible broad third party releases the Debtors' CEO would not obtain in a plan, is not a substitute for actual notice pursuant to the Bankruptcy Code. *See* Objection, ¶¶ 8, 19; *Harrington v. Purdue Pharma, LP*, 603 U.S. 204 (2024). *See, e.g., Fastax, Inc. v. Jackson Hewitt, Inc.*, No. 13-3078 (WJM), 2014 U.S. Dist. LEXIS 36422, at *11 (D.N.J. Mar. 20, 2014) ("It is irrelevant that [creditor] knew that the bankruptcy was occurring. Jackson Hewitt's failure to provide [creditor] with actual notice of the bar date means that the Chapter 11 discharge does not apply to [creditor's] claims.").

12.   Further, Moxie Apparel only obtained counsel on June 6, 2024, two (2) months ***after*** the April 2, 2024 bar date established by the Bar Date Order and one (1) week ***after*** this Court entered the Confirmation Order. Accordingly, the Debtors would most likely assert the same arguments against Moxie Apparel as they assert in this motion practice.[7]

13.   It is not the creditor's duty to fulfill the reporting requirements of the debtor to the bankruptcy court. "In chapter 11 cases, notice of or awareness that a bankruptcy case is pending

---

[7] Objection, ¶ 16 n. 4.

does not give the creditor the information needed to ascertain the bar date, and a creditor who was not served with notice of the bar date but nonetheless learns that a case is pending is not under a duty to discover the bar date." *In re Avaya, Inc.*, 2018 Bankr. LEXIS 2754, at *10 (Bankr. S.D.N.Y. Sept. 11, 2018) (citing *In re Medaglia*, 52 F.3d 451, 457 (2d Cir. 1995); *Shu Lun Wu v. May Kwan Si, Inc.*, 508 B.R. 606, 612 (S.D.N.Y. 2014); *In re New York, N.H. & H.R. Co.*, 197 F.2d 428, 431-32 (2d Cir. 1952) (Frank, J., dissenting), *rev'd*, 344 U.S. 293, (1953)).

14.    Furthermore, courts have held that "a known creditor with knowledge of the chapter 11 case who did not receive actual notice is not deemed to know the bar date or be under a duty to discover it, a creditor who has actual knowledge of the bar date ignores it at its peril." *See In re Queen Elizabeth Realty Corp.*, Case No. 13-12335 (SMB), 2017 Bankr. LEXIS 793, at *13 (Bankr. S.D.N.Y. Mar. 24, 2017) (court held that creditor was entitled to file late claim notwithstanding being represented by counsel); *In re Ditech Holding Corp.*, Case No. 19-10412 (JLG), 2021 Bankr. LEXIS 1, at *30-31 (Bankr. S.D.N.Y. Jan. 2, 2021) (court held that discharge injunction did not apply to claimant who did not have actual notice of the chapter 11 because "the majority of the Circuit Courts that have considered the matter hold that a creditor's actual knowledge of the pendency of a Chapter 11 case does not impose upon it an affirmative burden to intervene to present a claim, and that the creditor has a right to formal notice of the bankruptcy proceedings before his claims are barred forever.").

15.    Here, Moxie Apparel was an actual known creditor to Careismatic, as acknowledged by the Debtors' CRO in February 2024.  However, Moxie Apparel was not listed in the Debtors' Schedules, creditor matrix, and was not served with the Bar Date Order or notice of confirmation of the Debtors' Plan.  Moxie Apparel was not provided with copies of the Bar Date Order, the Plan Supplements rejecting contracts that impacted its inventory and pre-paid deposits, and notice

6

of the confirmation hearing as required by the Bankruptcy Code. Accordingly, none of Moxie Apparel's claims against Careismatic were discharged pursuant to the Plan or Section 1141 of the Bankruptcy Code.

16. Contrary to the Debtors' assertions, Moxie Apparel did not wait two years to exercise its rights.[8] Moxie Apparel has been in active litigation with Lakhani[9] and defending a retaliation lawsuit (the "**Retaliation Lawsuit**") commenced by Lakhani against Moxie Apparel's CEO.[10] Moxie Apparel has not sat idle.

17. The citations relied upon by the Debtors are either inapplicable or actually bolster Moxie Apparel's arguments. *See* Objection, ¶ 17. In *In re Poskanzer*, the objecting creditor was found to have participated in the debtor's 341 meeting and stipulated that his then law firm was provided notice of the bankruptcy case. 146 B.R. 125 (D.N.J. 1992). None of these facts are here. *In re Main* dealt with a ***debtor*** appealing a bankruptcy court decision which held that the debtor's debt to National Union Fire Insurance Company of Pittsburgh was non-dischargeable and found that because National Union did not receive actual notice of the debtor's bankruptcy proceedings, it was permitted to file a late filed non-dischargeability complaint. 157 B.R. 786, 790-791 (W.D. Pa. 1992). *In re Compton* is likewise inapplicable because the creditor there was listed incorrectly on the debtor's schedules. 891 F.2d 1180 (5th Cir. 1990). Moxie Apparel was never scheduled by the Debtors. *In re Price* is also inapplicable here because in *Price*, the creditor's attorney received a notice of the debtor's bankruptcy filing in the pre-petition state court litigation and as a result, was denied permitted to file late claims. 871 F.2d 97, 98 (9th Cir. 1989). This did not occur here.

18. Fourth, allowing Moxie Apparel's claims to proceed would neither "undermine [the

---

[8] Objection, ¶¶ 1, 20-22.
[9] *See* Motion, Exhibit A to Corbi Decl.
[10] A true and correct copy of the Retaliation Lawsuit is attached as **Exhibit B** to the Corbi Reply Decl.

Debtors'] successful reorganization" nor "materially prejudice the Debtors." *See* Objection, ¶¶ 24-25.  The Debtors' Plan provided: (i) the Class 3 First Priority Claims of over $600 million were provided with 100% of New Common Stock of the Debtors subject to standard dilutions such as the MIP Equity and the DIP Premiums; (ii) the Class 4 Second Lien Secured Claims of $85 million were provided with second lien warrants consisting of "5-year warrants to purchase up to 8.5% of the New Common Stock issued on account of the Allowed Second Lien Secured Claims with a strike price set at $818 million . . . ."; and (iii) the Class 5 general unsecured claims with a pro rata share of the GUC Trust Net Assets which consist of $3.5 million in cash, proceeds litigations less the GUC Trust fees and expenses.[11]

19.  Moxie Apparel's claims represent a small percentage of the reorganized Debtors' finances and Plan distributions.  This Court can craft relief for Moxie Apparel in such a manner that it will not disturb the Debtors' Plan and finances.

20.  Courts in this Circuit and others have granted creditors monetary relief notwithstanding a substantially consummated confirmed plan of reorganization so long as a remedy is fashioned that will not unravel the plan.  *See, e.g.*, *In re UA Theatre Co.*, 315 F.3d 217, 228 (3d Cir. 2003) (striking indemnification provision in Houlihan Lokey retention agreement for negligent conduct would not unravel debtors' plan); *In re PWS Holding Corp.*, 228 F.3d 224, 236 (3d Cir. 2000) (court found that releases could be stricken without unraveling plan); *In re Continental Airlines*, 203 F.3d 203, 210 n. 5 (3d Cir. 2000) (plaintiffs' claims against non-debtor D&Os worth a few million dollars, "a nominal amount" in the debtors' plan where the enterprise value of the debtors was $6.5 billion, would unravel the plan); *In re Am. Homepatient, Inc.*, 420 F.3d 559, 565 (6th Cir. 2005) (court denied dismissing appeal on mootness grounds because no evidence was presented that paying the lenders $290 million at 12.5% interest rather than $250

---

[11] *See* Plan, Art. III, B.3-5 (defined terms shall have those ascribed to them in the Debtors' Plan).

million at 6.785% interest would unravel the substantially consummated plan however the court affirmed the lower court's approval of the debtors' with a lower interest rate for the lenders); *In re ConvergeOne Holdings, Inc.*, Civil Case No. 4:24-cv-02001, 2024 U.S. Dist. LEXIS 192875, at \*14 (S.D. Tex. Oct. 23, 2024) (court did not dismiss appeal because relief could be fashioned without unraveling the plan that permitted the excluded lenders from participation in the distribution of the majority lenders); *In re Chateaugay Corp.*, 167 B.R. 776, 779-780 (S.D.N.Y.1994) (quoting *In re Chateaugay Corp.*, 10 F.3d 944, 952-954 (2d Cir. 1993) ("It is difficult to conceive how a potential liability of, at most, several million dollars could unravel the Debtors' reorganization, which involved the transfer of billions of dollars, and which has resulted in the revival of Debtors into a multi-billion dollar operation with $ 200 million in working capital.  Reversal or modification of the Settlement Order may unravel the Settlement, but appellees have made no showing that it would 'knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court.'"); *In re Aurora Foods, Inc.*, C.A. No. 04-166 GMS, 2006 U.S. Dist. Lexis 91659, at \*15-16 (D. Del. Dec. 19, 2006) (court allowed appeal to proceed because the debtors' $950 million plan need not be undone to satisfy a $6.85 million payment, particularly when the debtor had access to a $100 million revolver and with the debtor paying debt in the exact amount of its cash flow over four (4) years); *In re United Merchants & Mfrs., Inc.*, 138 B.R. 426, 429-430 (D. Del. 1992) (court did not dismiss appeal as moot because relief sought by pension fund on account of its $28 million withdrawal liability claim could be granted relief through a more equitable distribution of common and preferred stock); *In re Visteon Corp.*, 09-11786 (CSS) [D.I. 4634] (Bankr. D. Del. Dec. 13, 2010) (bankruptcy court approved $2.5 million settlement to former shareholders following appellate litigation

9

concerning whether remedies could be crafted notwithstanding substantially confirmed plan).[12]

21. Here, Moxie Apparel's claims are roughly $490,000 Careismatic requested in breach of contract as EXCLUSIVE supplier, plus 3% equity given to Careismatic for exclusive financing agreement such amounts. Such amounts would not unravel the Debtors' Plan.

22. Fifth, the Debtors' assertions that "protracted litigation" would prejudice the Debtors because "documents may no longer be reasonable available" or witnesses may have "retired or moved on" are conclusory statement void of an evidentiary showing and in direct contradiction with the Plan documents. See Objection, ¶ 24.

23. The Debtors' Plan provides that: "On and after the Effective Date, the Post-Effective Date Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Post-Effective Date Debtors." See Plan, Art. VIII.H. The Objection provides no detail or analysis of how the records related to the Moxie Apparel claim may have been altered, destroyed or lost in accordance with the Debtors' document retention policy.

24. Similarly, the GUC Trust Agreement, approved by this Court as part of the Plan, expressly provides for the retention and maintenance of books and records transferred to the GUC Trustee:[13]

> Maintenance and Disposition of GUC Trust and Debtor Records. The GUC Trustee shall maintain accurate records of the administration of the GUC Trust Assets, including receipts and disbursements and other activity of the GUC Trust. The GUC Trust may (at its sole cost and expense), but has no obligation to, engage a claims agent (including, but not limited to, the Debtors' Claims and Noticing Agent) to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases throughout the administration of the GUC Trust. To the extent of any Class 5 General Unsecured Claims reflected thereon, the Claims Register may serve as the GUC Trustee's register of

---

[12] The pleadings from the *Visteon* case are not attached to this Reply but are available upon request.

[13] *See GUC Trust Agreement*, §3.10, Exhibit H to *Notice of Filing of Second Amended Plan Supplement for the Second Amended Joint Plan of Reorganization of Careismatic Brands, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Further Technical Modifications)*. [Doc. No. 801].

GUC Trust Interests held by GUC Trust Beneficiaries.  The books and records maintained by the GUC Trustee and any records of the Debtors transferred to the GUC Trust may be disposed of by the GUC Trustee at the later of (a) such time as the GUC Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the GUC Trust or the GUC Trust Beneficiaries and (b) upon the termination and completion of the winding down or dissolution of the GUC Trust.

25.    If the Debtors do not have such records, then the GUC Trustee would most likely have the required records.  Moreover, the Debtors' Plan was confirmed two (2) years ago and the Debtors have not provided evidence of the schedule of destruction of business records that occurs in the ordinary course of its operations.  Likewise, no estate representative has sought approval from this Court to destroy books and records.  *See In re APP Winddown, LLC*, Case No. 16-12551 (BLS), 2019 Bankr. LEXIS 3790 (Bankr. D. Del. Dec. 16, 2019) (court denied document destruction motion).

*[Remainder of Page Intentionally Left Blank]*

26.    Accordingly, Moxie Apparel respectfully requests that this Court enter an order finding that the Discharge Injunction contained in the Debtors' Plan does not apply to Moxie Apparel.

## CONCLUSION

WHEREFORE, Moxie Apparel respectfully requests that this Court enter an order that the discharge injunction does not apply to Moxie Apparel and such other, further and different relief as this Court deems just, proper, and equitable.

**THE LAW OFFICES OF RICHARD J. CORBI PLLC**
*Co-Counsel to Moxie Apparel, Inc. DBA Moxie Scrubs*

By:    */s/ Richard J. Corbi*
       RICHARD J. CORBI

-and-

**McDonnell Crowley, LLC**
*Co-Counsel to Moxie Apparel, Inc.*
*DBA Moxie Scrubs*

By:    */s/ Brian T. Crowley*
       BRIAN T. CROWLEY

Dated:  May 1, 2026